IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Case No. 1:21-cv-10838 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DORKA URENA DE MARTINEZ d/b/a | ) | |
| DORKA TRAVEL, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

## COMPLAINT

The plaintiff United States of America, pursuant to 26 U.S.C. §§ 7402(a) and 7407, at the request of a delegate of the Secretary of the Treasury and the direction of a delegate of the Attorney General, brings this action to request that Dorka Urena de Martinez d/b/a Dorka Travel be enjoined from engaging in the business of preparing federal tax returns and employing any person acting as a federal tax return preparer.  In support of this action, the United States alleges as follows:

### Jurisdiction and Venue

1.      Jurisdiction exists under 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. ("Internal Revenue Code" or "I.R.C.") §§ 7402 and 7407.

2.      Venue is proper in this Court under 28 U.S.C. §§ 1391 and 1396 because the defendant, Dorka Urena de Martinez ("Martinez"), resides in and does business within this judicial district.

### Martinez's Tax Preparation Business

3.      Martinez owns her own business, Dorka Travel, located at 335 Centre Street, Jamaica Plain, Massachusetts, where she offers tax, travel, notary, and immigration services.

1

Martinez also works full-time as a manager for a local nonprofit organization.

4.      Martinez does not have any full-time employees at her business but does employ receptionists.

5.      Martinez prepares and electronically files federal individual income tax returns (Forms 1040) at her business location, Dorka Travel.

6.      Martinez conducts her tax preparation business under an arrangement with an entity known as F. Mitchell & Associates.  Martinez charges customers between $50 and $150 per return.  Martinez's business arrangement with F. Mitchell & Associates requires her to pay F. Mitchell & Associates a fee of $35 per filed return.

7.      Martinez began preparing returns for F. Mitchell & Associates in about 2009.

8.      Martinez has no formal training or education in income tax law or preparation. She learned tax preparation by practicing on commercial tax preparation software and observing another tax preparer working for F. Mitchell & Associates.

9.      F. Mitchell & Associates provided Martinez with a computer, commercial tax preparation software, and a basic tax questionnaire available in Spanish and English.

10.      Martinez receives a Form 1099-MISC annually from F. Mitchell & Associates for the net fee from customers that she retains.

11.      Since January 1, 2012, the IRS has required any tax return preparer who anticipates preparing and filing 11 or more Forms 1040 (including Forms 1040A, 1040EZ and 1041) during a calendar year to obtain an Electronic Filing Identification Number ("EFIN") and use IRS e-file to file returns electronically.  The IRS assigns an EFIN to individuals and firms that have completed an application process and passed a suitability check to become an authorized IRS e-file provider.

12.     Martinez uses an EFIN assigned to Florentino Mitchell d/b/a F. Mitchell & Associates.  As of 2017, that EFIN lists Martinez as the contact person and the Dorka Travel street address.

13.     All paid tax return preparers are required to affix a Preparer Tax Identification Number ("PTIN") to returns or claims for refund they prepare.  *See* 26 U.S.C. § 6109(a)(4) (requiring preparers to furnish "identifying number" on returns or claims for refund); *see also* Treas. Reg. § 1.6109-2 (imposing PTIN requirement on all returns or claims for refund filed by preparers after December 31, 2010).

14.     To receive a PTIN, return preparers must submit a PTIN application to the IRS and must renew their PTINs annually.  *See* IRS Form W-12, IRS Paid Preparer Tax Identification Number (PTIN) Application and Renewal, and IRS Instructions for Form W-12 (both available at https://www.irs.gov/forms-pubs).

15.     The IRS assigned Martinez a PTIN on November 29, 2010.  Her PTIN remains active.

16.     Martinez affixes her PTIN and the EFIN issued to Florentino Mitchell d/b/a F. Mitchell & Associates to the returns she files.

17.     In addition to preparing Forms 1040, Martinez also prepares handwritten Forms 1099-MISC, Miscellaneous Income ("Form 1099-MISC") and Forms 1096, Annual Summary and Transmittal of U.S. Information Returns ("Form 1096") for her customers.  A payor is required to file with the Internal Revenue Service ("IRS"), and provide to each non-employee, the Form 1099-MISC for each non-employee who receives at least $600 from the payor in the course of the payor's business.  The Form 1096 is a cover sheet used to submit, *inter alia*, Forms 1099-MISC to the IRS.  Martinez charges approximately $48 for each form she prepares.

18.     Martinez does not instruct her customers to file the Forms 1099-MISC with the IRS or to send copies to the payees.

19.     On information and belief, Martinez obtains most of her tax preparation business through word-of-mouth, her personal Facebook page, and individuals initially seeking other services offered by Dorka Travel.

20.     Martinez customarily asks her customers to complete a questionnaire and to provide tax documents such as identification, social security cards, health insurance, Forms 1099-MISC, and Forms W-2, Wage and Tax Statement ("Form W-2").

21.     Martinez maintains a paper file for each customer which contains copies of the signed Form 8879 (the IRS e-file signature Authorization); the questionnaire; and the tax documents provided to her.

22.     IRS records reveal that Martinez has prepared more than 2,000 returns for tax years 2013 through 2021:

| Return Filing History Under Martinez's PTIN | |
|---|---|
| Tax Year | Numbers of Returns |
| 2019 | 239 |
| 2018 | 315 |
| 2017 | 507 |
| 2016 | 399 |
| 2015 | 328 |
| 2014 | 205 |
| 2013 | 148 |
| **TOTAL** | **2,141** |

4

**Martinez's Fraudulent Tax Preparation Activities**

23.     In April 2018, the IRS opened a civil investigation into Martinez's return preparation activities.

24.     As part of its investigation, IRS interviewed Martinez about her tax return preparation activities and also interviewed 35 customers whose returns Martinez prepared for tax year 2017 (processing year 2018).  The IRS selected for interviews customers whose returns both contained a Form Schedule C and also claimed dependents.

25.     Because the IRS did not formally examine the 35 returns, it made no changes as a result of the customer interviews.

26.     The IRS determined that 27 of the 35 returns contained false statements that underreported the tax owed, a 77.14% underreporting rate, for a total estimated tax loss of $127,767.00, or an estimated tax loss of $4,732.11 per return.

27.     The false statements on the 27 returns reflected primarily four recurring patterns or schemes: (1) overstating self-employment income, often by reporting fictitious self-employment income; (2) understating self-employment income and overstating expenses; (3) reporting fictitious dependents; and (4) misrepresenting filing status.

| Issue | Number of Misrepresentations on the 35 Interviewed Customers' Federal Tax Returns | Percent of Returns with This Issue |
|---|---|---|
| Fictitious Schedule C or Inflated Schedule C income | 13 | 37.14% |
| Underreported Schedule C income and/or overstated expenses | 12 | 34.29% |
| Fictitious Dependents | 10 | 28.57% |
| Incorrect Filing Status | 8 | 22.86% |

28.     These schemes fraudulently reduce Martinez's customers' tax liability and maximize their dependency exemptions, earned income tax credit ("EITC"), child tax credit ("CTC"), and the additional child tax credit ("ACTC"), entitling them to a refund to which they are not entitled.

29.     The EITC is a refundable tax credit available to certain low-income workers.  The amount of the credit is based on the taxpayer's earned income, filing status, and number of claimed dependents.  The requirements for claiming the EITC are set forth in 26 U.S.C. § 32 and accompanying Treasury Regulations.  Because the EITC is a refundable credit, claiming an EITC can reduce a taxpayer's federal tax liability below zero, entitling the taxpayer to a refund from the U.S. Treasury.

30.     For purposes of the EITC, earned income is reported either as wage income or as self-reported income from a sole proprietorship.

31.     An employee's wage income is reported by the employer on a Form W-2, a copy of which is furnished both to the employee and to the IRS.

32.     An individual who earns income from a sole proprietorship reports that income, and any expenses, on the Form Schedule C.  The Form Schedule C is submitted to the IRS as an attachment to the individual's Form 1040.  The overall income (or loss) from Schedule C is

6

reported as a line item on the individual's Form 1040.  This line item raises or lowers the individual's earned income, which in turn can affect the amount of the EITC to which the individual is entitled.

33.     The IRS is unable to verify income and expenses reported on a Schedule C without doing an examination of the individual taxpayer.

34.     For tax year 2017, the EITC ranged from $510 to $6,318.  Due to the manner in which the EITC is calculated, an individual with more dependents may be entitled to a larger EITC, and for certain income ranges, individuals with higher annual incomes are entitled to a larger credit than those with lower annual incomes.  Some tax return preparers refer to the range of earned income corresponding to a maximum EITC as the "sweet spot."

35.     To bring a customer's reported earned income within or closer to the EITC sweet spot, and depending on a customer's actual earned income (as reported on a Form W-2), Martinez manipulates self-employment income reported on the Schedule C, either by inflating or fabricating self-employment income or by understating self-employment income. Martinez also maximized the EITC by claiming fraudulent dependents and false filing statuses.

36.     For tax years prior to 2018, claiming the CTC could reduce a taxpayer's federal tax liability, as it provided a tax credit of up to $1000 per child for a maximum of three children. While the CTC was non-refundable, the ACTC was refundable and could be claimed by taxpayers who owed the IRS less than their qualified CTC amount.  In other words, the ACTC refunded the unused portion of the CTC to the taxpayer.  *See* the Tax Cuts and Jobs Act of 2017. Pub. L. NO. 115-97, 131, Stat. 2054 (2017).

37.     Of the 35 returns reviewed, 22 (62.86%) claimed the EITC and 18 (51.43%) claimed the CTC and/or ACTC.

7

38.     For tax years 2014 through 2018, Martinez prepared 1,067 returns that claimed the EITC.  Of those returns, 620 had a Schedule C and 839 claimed the ACTC.

| Tax Year | Numbers of Returns | Total Returns with EITC | Percent of Returns with EITC | Total EITC Credits Claimed | Total Returns with Schedule Cs | Total Returns with ACTC | Percent of Returns with ACTC | Total ACTC Credits Claimed |
|---|---|---|---|---|---|---|---|---|
| 2018 | 315 | 162 | 52% | $566,849 | 93 | 146 | 47% | $230,181 |
| 2017 | 507 | 304 | 61% | $1,029,115 | 181 | 227 | 45% | $288,522 |
| 2016 | 399 | 251 | 64% | $849,378 | 152 | 193 | 49% | $248,515 |
| 2015 | 328 | 210 | 64% | $703,083 | 128 | 161 | 49% | $199,524 |
| 2014 | 205 | 140 | 68% | $449,699 | 66 | 112 | 55% | $134,361 |
| TOTAL | 1,754 | 1,067 | 61% | $3,598,124 | 620 | 839 | 48% | $1,101,103 |

39.     A tax return preparer must make reasonable inquiries to ensure a customer is legitimately entitled to the EITC, CTC and the ACT, document compliance with the due diligence requirements, and keep that documentation for three years. 26 C.F.R. § 1.6995–2.  In 2017, a return preparer was required to document her due diligence by completing Form 8867, "Paid Preparer's Due Diligence Checklist" and filing the form with the customer's Form 1040.

40.     Upon information and belief, Martinez checks boxes on Form 8867 falsely representing that she asked her customers questions about their eligibility for the EITC, CTC and ACT and that she received, reviewed, and maintained documentation from her customers for determining their eligibility for the credits; and for tax returns claiming Schedule C business profits or losses, Martinez falsely represents that the customer provided "Taxpayer Summary of Income" and/or "Records of Expenses" when such information had not been provided to her.

8

### Specific Examples of Martinez's Fraudulent Tax Preparation

41.     Customers 1 through 6, discussed below, were among the 35 customers whom the IRS interviewed.

**CUSTOMER 1**

42.     Martinez prepared and filed the 2017 federal income tax return of CUSTOMER 1.

43.     Upon information and belief, Martinez has prepared and filed CUSTOMER 1's federal income tax returns since about 2014. CUSTOMER 1 completed a questionnaire the first year he hired Martinez to prepare his federal income tax return.  He did not fill out a questionnaire for tax year 2017.

44.     CUSTOMER 1 provided Martinez with a Form W-2, pay stubs, bank statements, and his younger sister's social security card.  CUSTOMER 1's customer file contained copies of a Form 8879; Form 8889, Health Savings Accounts (HSAs); Form 1099-K, Payment Card and Third Party Network Transactions ("Form 1099-K"); and a Form W-2.

45.     Martinez falsely represented CUSTOMER 1's filing status by claiming head of household rather than single.  CUSTOMER 1 was single with no dependents in 2017.

46.     CUSTOMER 1's 2017 return claimed a dependency exemption for his sister who did not live with him in 2017.  On Schedule EITC, Martinez claimed that CUSTOMER 1's sister lived with him the full year.

47.     Martinez checked on Form 8867 that she interviewed CUSTOMER 1 and documented CUSTOMER 1's responses to determine that he was eligible to claim the EITC and the CTC.  Martinez also checked on Form 8867 that she determined that CUSTOMER 1 was eligible to claim the EITC and checked that she explained to CUSTOMER 1 that he could not claim the EITC if he did not live with a qualifying child for over half the year.

9

48.     Martinez certified on Form 8867 that her answers were, to the best of her knowledge, true, correct and complete. Martinez also noted that CUSTOMER 1 had provided her with copies of a birth certificate and a social security card, but neither document was found in CUSTOMER 1's customer file.

49.     In 2017, CUSTOMER 1 worked full-time as a W-2 employee for a bank. CUSTOMER 1 also owned a self-operated laundry facility where he hired individuals to work in the office and to provide wash and fold services.  Upon information and belief, CUSTOMER 1 provided Martinez business records, from which she calculated gross receipts for the laundry business.  Other than a Form 1099-K, there were no supporting documents or calculations for the laundry business in CUSTOMER 1's customer file.

50.     The Form 1099-K is an information reporting form that third-party payors use, *inter alia*, to report payments they made to business taxpayers who accepted payment in the form of payment cards (e.g., debit, credit, or stored-value cards).  The payor sends the Form 1099-K to both the IRS and to the business taxpayer.

51.     The Schedule C that Martinez prepared and filed for CUSTOMER 1's laundry business reported that CUSTOMER 1's gross receipts were $44,185 and his wage expenses were $70,635.

52.     The Form 1099-K contained in CUSTOMER 1's file reported that CUSTOMER 1's laundry business received $42,403.49 in gross receipts from credit card transactions. Upon information and belief, CUSTOMER 1's laundry business is primarily cash based, but Martinez reported less than $2,000 in cash receipts.

53.     During his interview, CUSTOMER 1 provided the IRS with handwritten copies of five Forms 1099-MISC prepared by Martinez reporting nonemployee compensation totaling

$58,210. The Forms 1099-MISC and CUSTOMER 1's Schedule C used the Employer

Identification Number ("EIN") for CUSTOMER 1's laundry business. There were no copies of

these Forms 1099-MISC or any other supporting documents or calculations in CUSTOMER 1's

customer file for the claimed wage expenses on the Schedule C.

54.     None of the Forms 1099-MISC were filed with the IRS.

55.     Martinez created and filed a Schedule C that underreported CUSTOMER 1's

gross receipts and overstated wage expenses.

56.     CUSTOMER 1's 2017 tax return underreported CUSTOMER 1's tax liability due

to Martinez's use of the filing status scheme, the fictitious dependent scheme, and the

underreported Schedule C income and overstated expenses scheme.  Martinez knowingly

underreported CUSTOMER 1's Schedule C income while overstating wage expenses, resulting

in a net loss of $26,450; she falsely represented CUSTOMER 1's filing status by claiming head

of household; and included an improper dependent claim, all to maximize CUSTOMER 1's

EITC and to fraudulently qualify him for the CTC and the ACT, resulting in CUSTOMER 1

receiving a refund of $9,420 to which he was not entitled.

57.     The IRS estimates that CUSTOMER 1's 2017 return underreported his liability

by $24,776.00.

**CUSTOMER 2**

58.     Martinez prepared and filed the 2017 federal income tax return of CUSTOMER 2.

59.     Upon information and belief, Martinez has prepared and filed CUSTOMER 2's

federal income tax returns since about 2013.

60.     For tax year 2017, CUSTOMER 2 provided Martinez with identification, social

security cards for herself and dependents, and healthcare information.  CUSTOMER 2's

customer file contained copies of four social security cards and two birth certificates.

61.     CUSTOMER 2's 2017 return contained a head of household filing status and included dependent claims for her three children. Only CUSTOMER 2's two minor children qualified for the CTC and the ACT.

62.     In 2017, CUSTOMER 2 was self-employed, working in home health care and house cleaning. She did not receive any Forms 1099-MISC for her work and did not keep any records of income or expenses. CUSTOMER 2 estimated she earned approximately $120 per week, or about $6,240 annually ($120 x 52 weeks).

63.     CUSTOMER 2 did not provide Martinez with any documents supporting her income or expenses. On Form 8867, Martinez falsely represented that CUSTOMER 2 provided her with a "Summary of Income" and "Records of Expenses."

64.     Martinez created and filed a Schedule C that reported gross receipts of $15,500. CUSTOMER 2's customer file for 2017 contained a signed and notarized statement by CUSTOMER 2 dated March 15, 2018, stating that she expected to earn $15,000 that year. CUSTOMER 2's Customer file did not contain any other supporting documents or calculations. Upon information and belief, Martinez advised CUSTOMER 2 to create and sign, and have notarized, the statement about her 2017 income.

65.     CUSTOMER 2's 2017 tax return underreported CUSTOMER 's tax liability due to Martinez's use of the overstating self-employment income scheme.  Martinez knowingly overstated CUSTOMER 2's Schedule C income in order to maximize CUSTOMER 2's EITC, CTC, and ACT.

66.     CUSTOMER 2's tax return reported that she was entitled to a refund of $5,137. CUSTOMER 2 did not receive this refund amount because it was subject to an offset pursuant to

26 U.S.C § 6402(a).

67.     The IRS estimates that CUSTOMER 2's 2017 return overstated her refund by

$3,289.00.

**CUSTOMERS 3 and 4**

68.     Martinez prepared and filed the 2017 federal income tax return of CUSTOMERS

3 and 4

69.     Upon information and belief, Martinez has prepared and filed CUSTOMERS 3

and 4's federal income tax returns since about 2014.

70.     In 2017, CUSTOMER 3 and 4 were married and lived with their daughter and

CUSTOMER 4's son (CUSTOMER 3's stepson). CUSTOMER 3 and 4's 2017 return reported a

married filing jointly filing status and included dependent claims for their daughter and

CUSTOMER 3's stepson.  CUSTOMER 3's daughter qualified for the CTC.  Upon information

and belief, CUSTOMER 3 did not tell Martinez to claim his stepson as a dependent on his 2017

return. CUSTOMER 3 was not eligible to claim his stepson as a dependent child because the

stepson was older than nineteen years old and was not a student.

71.     In 2017, CUSTOMER 3 and CUSTOMER 4 both received Forms W-2.

CUSTOMER 3 was also self-employed delivering flyers, for which he received a Form 1099-

MISC.  He does not have any employees or independent contractors, and his only business

expenses were fuel expenses. CUSTOMER 3 provided Martinez with a copy of Form 1099 but

he did not provide receipts or any other supporting documents for expenses. Martinez falsely

represented on Form 8867 that CUSTOMER 3 provided her with a "Summary of Income" and

"Records of Expenses."

72.     Martinez created and filed a Schedule C for CUSTOMER 3 for a business

described as "Repartidor" ("distributor," in Spanish) that reported gross receipts of $8,694 and expenses of $38,384, for a net loss of $29,690. The $38,384 in expenses reported on the Schedule C included a line item for temporary employee expenses of $25,300, as well as business property expenses, phone expenses, and insurance expenses. The Schedule C did not include any line item for CUSTOMER 3's fuel expenses.

73. CUSTOMER 3's customer file contained handwritten copies of two Forms 1099-MISC prepared by Martinez reporting nonemployee compensation totaling $25,200, plus an additional Form 1099-MISC that appeared to be a duplicate. The forms were made out in the names of two individuals for whom Martinez also prepared income tax returns in 2017, but the forms did not contain the correct Tax Identification Numbers for those two individuals. Instead, the Tax Identification Numbers for the two individual payees appeared to be slight variations of their Tax Identification Numbers. Both Forms 1099-MISC were filed with the IRS.

74. The IRS received a third Form 1099 purportedly issued by CUSTOMER 3 for the 2017 tax year which reported nonemployee compensation totaling $15,100 and was made out to one of the two individuals for whom a Form 1099 was found in CUSTOMER 3's customer file. This third Form 1099 also listed a Tax Identification Number that did not belong to the individual payee but appeared to be a slight variation of the payee's Tax Identification Number.

75. Customer 3 owns a multi-family property. He resides in one unit and rents the other. Martinez created and filed a Schedule E that reported rents received in the amount of $14,400 and rental expenses totaling $25,651, or a net loss of $11,251. Martinez treated all of CUSTOMER 3's mortgage interest expense, real estate taxes, and homeowner's insurance as rental expenses instead of allocating those expenses between his personal and rental use.

76. CUSTOMERS 3 and 4's 2017 tax return underreported their tax liability due to

14

Martinez's use of the fictitious dependent scheme, and the overstated Schedule C expenses scheme. Martinez knowingly fabricated expenses and overstated CUSTOMER 3's Schedule C expenses, included an improper dependent claim, and overstated Schedule E expenses, all to maximize CUSTOMERS 3 and 4's EITC, CTC and ACT, resulting in CUSTOMERS 3 and 4 receiving a refund of $6,409 to which they were not entitled.

77.     The IRS estimates that CUSTOMERS 3 and 4's 2017 return should have reported a liability of $1,778 rather than a refund of $6,409.

**CUSTOMERS 5 and 6**

78.     Martinez prepared and filed the 2017 federal income tax return of CUSTOMERS 5 and 6.

79.     Upon information and belief, Martinez has prepared and filed CUSTOMERS 5 and 6's federal income tax returns since about 2013.

80.     In 2017, CUSTOMERS 5 and 6 were married and filed a joint return claiming one dependent.

81.     In 2017, CUSTOMER 5 and CUSTOMER 6 were both self-employed as Uber drivers. CUSTOMER 5 also worked as a driver for two other transportation companies.  Upon information and belief, CUSTOMER 5 gave Martinez Uber statements and verbal estimates of his income from his other driving business and driving expenses.

82.     Martinez created and filed a Schedule C for CUSTOMER 5 for a business described as "Driver" that reported gross receipts of $40,498 and expenses of $29,382, for a net profit of $11,116. Martinez also created and filed a Schedule C for CUSTOMER 6 for a business described as "Driver" that reported gross receipts of $36,078 and expenses of $35,697, for a net profit of $381.  Uber issued CUSTOMER 6 a 1099-K for $33,335 and a 1099-MISC for $2,741,

totaling $36,076. CUSTOMERS 5 and 6's customer file did not contain any documents or calculations supporting the gross receipts for Customer 5 or the expenses for either CUSTOMER 5 or CUSTOMER 6.

83.     Martinez falsely represented on Form 8867 that CUSTOMER 5 provided her with Forms 1099, a "Summary of Income" and "Records of Expenses." CUSTOMER 5 provided Martinez with a single Uber statement and provided all other information verbally.

84.     The Forms 1099-MISC that the IRS received from Uber and two other transportation companies for which CUSTOMER 5 drove reflect that CUSTOMER 5's gross receipts were $48,136 in 2017.

85.     CUSTOMERS 5 and 6's 2017 tax return underreported their tax liability due to Martinez's use of the underreported Schedule C income and overstated expenses scheme. Martinez underreported CUSTOMER 5's Schedule C gross receipts and overstated CUSTOMER 5 and Customer 6's self-employment expenses in order to maximize their EITC, resulting in CUSTOMERS 5 and 6 receiving a refund of $1,829 to which they were not entitled.

86.     The IRS estimates that, instead of a refund of $1,829, CUSTOMERS 5 and 6's 2017 return should have reported a liability of $9,674.

**CUSTOMERS 7 and 8**

87.     Martinez prepared and filed the 2017 federal income tax return of CUSTOMER 7 and CUSTOMER 8.  CUSTOMERS 7 and 8 did not have their tax returns prepared by Martinez in years prior to 2017.  Martinez did not ask CUSTOMERS 7 and 8 to complete an intake sheet or questionnaire for tax year 2017.

88.     In 2017, CUSTOMERS 7 and 8 were married and filed a joint return.

89.     CUSTOMERS 7 and 8 both received Forms W-2.  CUSTOMER 7 was also self-

employed as an independent salesperson for Mary Kay, from which she received a Form 1099-MISC. CUSTOMER 7 provided Martinez with receipts and handwritten expense records.

90.     Martinez created and filed a Schedule C that reported gross receipts of $9,440 and expenses of $16,753, for a net loss of $7,313. CUTOMER 7's Schedule C reported expenses for transportation, travel, phone, rent, and unsold inventory.

91.     Martinez included in the Schedule C expenses 50% of CUSTOMER 7's yearly rent and a phone expense of $1,740.    The total annual cost for her phone, which she used for both personal and business calls, was about $1200.

92.     A taxpayer may deduct expenses for the business use of her home for storage of inventory or product samples if (1) the taxpayer sells products at wholesale or retail as their trade or business; (2) the taxpayer keeps the inventory or product samples in her home for use in her trade or business; (3) the taxpayer's home is the only fixed location of her trade or business; (4) the taxpayer uses the storage space on a regular basis; and (5) the space the taxpayer uses is a separately identified space suitable for storage.  See IRS Publication 587, Business Use of Your Home.

93.     In 2017, the only business use CUSTOMER 7 made of her home was to store Mary Kay products on a table and other furniture in her living room.  CUSTOMER 7 was not entitled to a deduction for the business use of her home in 2017.

94.     CUSTOMERS 7 and 8's 2017 tax return underreported their tax liability due to Martinez's use of the overstated expenses scheme. Martinez underreported CUSTOMER 7's Schedule C gross receipts and overstated her expenses in order to create a net loss and maximize CUSTOMERS 7 and 8's EITC, resulting in them receiving a refund of $1,671 to which they were not entitled.

17

95.     The IRS estimates that, rather than receiving a refund of $1,671, CUSTOMERS 7 and 8's 2017 return should have reported a liability of $6,558.

**CUSTOMER 9**

96.     Martinez prepared and filed the 2017 federal income tax return of CUSTOMER 9.

97.     Upon information and belief, Martinez has prepared and filed CUSTOMER 9's federal income tax returns since about 2015.

98.     CUSTOMER 9's customer file contained copies of Forms W-2, 1099-MISC, and 1099-K, a questionnaire, a letter written in Spanish and dated April 15, 2017 authorizing CUSTOMER 9 to claim this dependent, and copies of this dependent's birth certificate and social security card.

99.     Martinez falsely represented CUSTOMER 9's filing status as single. CUSTOMER 9 was married and living with his spouse in 2017.

100.     CUSTOMER 9's 2017 return contained one dependent who qualified for the child tax credit.  This dependent was identified as CUSTOMER 9's nephew.

101.     CUSTOMER 9's claimed dependent was not his nephew and bears no relationship to him.  Upon information and belief, CUSTOMER 9 paid the child's mother $1000 to claim her son as a dependent on his 2017 income tax return.  The child's mother also claimed her son as a dependent on her 2017 income tax return.

102.     Martinez checked on Form 8867 that she interviewed CUSTOMER 9 and documented CUSTOMER 9's responses to determine that he was eligible to claim the EITC and the CTC.  Martinez also checked on Form 8867 that she determined that the CUSTOMER 9 was eligible to claim the EITC and checked that she explained to CUSTOMER 9 that he could not claim the EITC if he did not live with a qualifying child for over half the year. Martinez further

18

certified on Form 8867 that her answers were to the best of her knowledge, true, correct and complete.

103.    Martinez noted on Form 8867 that  CUSTOMER 9  provided her with a copy of this dependent's birth certificate but she did not list on the Form 8867 the copy of the dependent's social security card or the letter authorizing CUSTOMER 9 to claim this dependent which were found in CUSTOMER 9's client file.

104.    In 2017, CUSTOMER 9 received a Form W-2 for his work in maintenance for a company located in Boston Massachusetts.

105.    CUSTOMER 9 received a Form 1099-K and a Form 1099 from Uber, which together totaled $10,544.23.  While CUSTOMER 9 was registered to drive with Uber, CUSTOMER 9's son was the actual driver.

106.    Martinez created and filed a Schedule C for CUSTOMER 9 for a business described as "Driver" that reported gross receipts from Uber of $10,545 and expenses of $16,795 for a net loss of $6,250.  The expenses reported on CUSTOMER 9's Schedule C included expenses for labor, Uber fee and expenses, E-ZPass, and phone. CUSTOMER 9's Customer file contained no expense information or calculations.  Although CUSTOMER 9 included a deduction for labor expenses, CUSTOMER 9 did not issue his son a Form 1099.

107.    CUSTOMER 9's 2017 tax return underreported CUSTOMER 9's tax liability due to Martinez's use of the fictitious dependent scheme and the overstated Schedule C expenses scheme. Martinez knowingly claimed expenses that were not incurred by CUSTOMER 9 and overstated CUSTOMER 9's Schedule C expenses to create a net loss, and included an improper dependent claim, all to maximize CUSTOMER 9's EITC, and to fraudulently qualify for the CTC and ACT, resulting in CUSTOMER 9 receiving a refund of $6,083, $5,230 more than that

to which he was entitled.

### Martinez's Form 1099-MISC Scheme

108.    Upon information and belief, Martinez creates false Forms 1099-MISC for customers that are used in two different ways. The customer who is the alleged payor uses the Forms 1099-MISC she prepares as evidence of business expenses for purposes of reducing Schedule C income and the customer who is the alleged payee uses Form 1099-MISC as evidence of and to increase Schedule C income for purposes of qualifying for the EITC.

109.    Martinez frequently records incorrect payor and payee Tax Identification Numbers ("TIN") on the Forms 1099-MISC and frequently prepares Forms 1099-MISC with variations of the payees's name. Martinez does not require any proof of payments and does not discuss the filing requirements for Forms 1099-MISC with the payor customer. Because of the incorrect Tax Identification Numbers, even if the Forms 1099-MISC were filed, the IRS would be unable to match them with the correct taxpayer.

110.    Upon information and belief, Martinez directly provides some Form 1099-MISC payee customers, with the Forms 1099-MISC that she prepares without the payor customer's authorization or proof of payment to the payee.

### Forms Related to CUSTOMER 1

111.    IRS records for tax year 2016 reveal that eleven Forms 1099-MISC using the correct EIN for CUSTOMER 1's laundry business were filed with the IRS. These eleven Forms 1099-MISC reported nonemployee compensation totaling $106,720.

112.    In 2016, Martinez prepared the income tax returns of at least seven of CUSTOMER 1's payees for whom Forms 1099-MISC were filed with the IRS.

113.    CUSTOMER 1's provided the IRS with copies of 5 handwritten Forms 1099-

MISC prepared by Martinez but not filed with the IRS. Four of those five matched the names of four Forms 1099-MISC filed with the IRS for tax year 2016.

114.    In 2017, Martinez prepared the income tax returns of the five payees of the handwritten Forms 1099-MISC that were not filed with the IRS.

115.    The income reported on the Forms 1099-MISC was the primary source of income of all five payees and what qualified them for the EITC.

**Forms Related to CUSTOMER 3**

116.    CUSTOMER 3's customer file contained handwritten copies of two Forms 1099-MISC prepared by Martinez reporting nonemployee compensation totaling $25,200 plus what appeared to be a duplicate of one of the forms.

117.     CUSTOMER 3 denied having any employees in 2017.  CUSTOMER 3's Schedule C business is for newspaper delivery and his only business expenses were fuel expenses.

118.    For tax year 2017, three Forms 1099-MISC were filed with the IRS listing CUSTOMER 3 as the payor. Two of the Forms 1099-MISC filed with the IRS were for the same payee customer, but one form reported non-employee compensation totaling $15,000 whereas the second Form 1099-MISC reported non-employee compensation totaling $15,100. Both Forms 1099-MISC reported the payee's TIN incorrectly.  This incorrect TIN also appears on the paper copies that were kept in CUSTOMER 3's client file.

119.    The third Form 1099-MISC filed with the IRS and listing CUSTOMER 3 as the payor reported non-employee compensation totaling $10,200. This Form 1099-MISC contained a misspelling of the payee's name but the correct TIN for that payee.

120.    Three of the 35 customers interviewed during the IRS investigation claimed to

have worked for CUSTOMER 3. The names of two of these payees matched the names on the three Forms 1099-MISC filed with the IRS.

121. PAYEE A for whom two Forms 1099-MISC purportedly issued by CUSTOMER 3 were filed with the IRS claimed to have earned $300 per week during 2017 driving CUSTOMER 3's daughter to school. Martinez created and filed a Schedule C for PAYEE A for a business described as "Cleanest" that reported gross receipts totaling $15,100, the same amount reported in one of the Forms 1099-MISC filed with the IRS.

122. PAYEE B for whom a third Form 1099-MISC purportedly issued by CUSTOMER 3 was filed with the IRS, claimed to have earned $360 a week to clean CUSTOMER 3's home. Martinez created and filed a Schedule C for PAYEE B for a business described as "Cleanest" that reported gross receipts totaling $10,200, the same amount reported on the Forms 1099-MISC filed with the IRS.

123. PAYEE C claimed to have worked at two separate daycares, one of which was allegedly operated by CUSTOMER 3. PAYEE C's customer file contained one Form 1099-MISC and a duplicate, both of which purported to be from a daycare business that did not file either a tax return or any Forms 1099-MISC in 2017. Neither PAYEE C's customer file nor CUSTOMER 3's customer file contained a Form 1099-MISC listing CUSTOMER 3 as the payor and PAYEE C as the payee. CUSTOMER 3's customer file contained a Form 1099-MISC that purported to be issued by the daycare business that filed no returns in 2017.

124. Despite no record of a Form 1099-MISC allegedly issued by CUSTOMER 3, Martinez created and filed a Schedule C for PAYEE C that listed CUSTOMER 3's name as the business name. The Schedule C reported gross receipts totaling $4,700, the same amount reported on the Forms 1099-MISC purported to be from the other daycare found in the customer

files of CUSTOMER 3 and PAYEE C but not filed with the IRS.

**Other Examples of 1099 Misconduct**

125.    Other customers interviewed during the IRS investigation claimed to have had Forms 1099-MISC prepared by Martinez that were not filed with the IRS, often for alleged cleaning or daycare assistance work. Copies of the purported Forms 1099-MISC were not found in the customers' files.

126.    IRS records reveal that Martinez prepared the 2017 income tax return for a customer with a daycare business.  Nine Forms 1099-MISCs were filed with the IRS for this customer as payor.

127.    These nine Forms 1099-MISC reported nonemployee compensation totaling $84,600.

128.    Eight of the Forms 1099-MISC report the payees' incorrect name, one Form 1099-MISC reports the payee's incorrect TIN, and eight of the Forms 1099-MISC appear to be a variation of the same four names.

129.    Two Forms 1099-MISC were filed with the IRS for a payee customer who has not filed an income tax return since 2014.

130.    In 2017, Martinez prepared the income tax returns of four of the payees for whom 1099-MISC were filed with the IRS.

131.    IRS records reveal that Martinez prepared the 2017 income tax return for a second payor customer with a daycare business. The Schedule C that Martinez prepared and filed for this payor's daycare business reported gross receipts totaling $97,204 and "Wages and Temporate" under other expenses totaling $80,400.

132.    Ten Forms 1099-MISC were filed with the IRS for this payor but reported the

incorrect payor TIN.  Only four Forms 1099-MISC reported the payees' correct name and TIN.

133.    These ten Forms 1099-MISC reported nonemployee compensation totaling

$80,400.

134.    In 2017, Martinez prepared the income tax returns of nine of the payees for whom

Forms 1099-MISC were filed with the IRS.

135.    Martinez created and filed a Schedule C's for the nine payee customers that

reported gross receipts totaling amounts that matched the amounts reported in the Forms 1099-

MISC filed with the IRS.

### Harm to the United States

136.    The fraudulent returns prepared and filed by Martinez have caused and continue

to cause substantial harm to the Government by fraudulently reducing the customers' reported

tax liabilities, helping taxpayers to obtain refunds to which they were not entitled, and

obstructing the IRS's efforts to administer the federal tax laws.

137.    Martinez's fraudulent conduct, which is essentially stealing from the U.S.

Treasury, has caused direct monetary harm to the Government.

138.    Martinez prepared 507 returns for tax year 2017 (processing year 2018).  For the

35 customers interviewed during the IRS investigation of that processing year, the IRS showed

an actual harm to the United States of $127,767.  However, because Martinez has prepared over

2,000 tax returns for tax years 2013 through 2019, the tax loss to the Government from

Martinez's fraudulent conduct likely far exceeds $127,700.

139.    In addition to the direct monetary and administrative harm caused by preparing

returns that understate customers' tax liabilities, Martinez's illegal activities undermine public

confidence in the administration of the federal tax system and encourage noncompliance with the

24

internal revenue laws.

140.     Martinez's illegal conduct also causes intangible harm to honest tax return preparers, because by preparing returns that falsely or fraudulently underreport customers' tax liabilities and inflate the customers' refunds, Martinez gains an unfair advantage over tax returns preparers who do not do so and who, as a result, may have fewer customers.

**COUNT I: Injunction under I.R.C. § 7407 for Violation of I.R.C. §§ 6694 and 6695 and for Deceptive or Fraudulent Conduct That Interferes With Internal Revenue Code Administration**

141.     The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

142.     Pursuant to I.R.C. § 7407, a court is authorized to enjoin a tax return preparer who, among other things, engages in conduct subject to penalty under I.R.C. § 6694 or I.R.C. § 6695, or who engages in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws.

143.     I.R.C. § 7701(a)(36) defines a "tax return preparer" as a person who prepares for compensation, or who employs one or more persons to prepare for compensation, any return or a substantial portion thereof.

144.     Martinez is a tax return preparer within the meaning of I.R.C. § 7701(a)(36).

145.     I.R.C. § 6694(a) provides that a tax return preparer is subject to penalty if he or she prepares a return or claim for refund understating a customer's tax liability when: (1) the understatement is due to a position for which there is no substantial authority; (2) and the preparer knew or reasonably should have known of such position.

146.     I.R.C. § 6694(e) defines understatement of liability to include any understatement of tax due or "overstatement of the net amount creditable or refundable."

147.    In violation of I.R.C. § 6694(a), Martinez prepared returns for customers that underreported the customers' tax liabilities and that she knew or should have known contained positions for which there was no substantial authority or for which there was no reasonable basis.

148.    I.R.C. § 6694(b) penalizes a tax return preparer who prepares a return or claim for refund with an understatement of liability any part of which is due to: (1) a willful attempt to understate the liability; or (2) a reckless and intentional disregard of rules or regulations.

149.    In violation of I.R.C. § 6694(b), Martinez prepared tax returns for customers that she knew or reasonably should have known contained false business income and expenses, incorrect filing statutes, and false child tax credits in order to understate the customers' tax liabilities.

150.    In violation of I.R.C. § 6694(b), Martinez recklessly or intentionally disregarded rules and/or regulations by manipulating her customers' filing statuses, business income, expenses, and dependency exemptions in order to understate her customers' tax liabilities.

151.    I.R.C. § 6695(g) penalizes a tax return preparer who fails to comply with due diligence requirements imposed by the Secretary of the Treasury with respect to determining eligibility for the EITC, the CTC, education credits, and/or eligibility to file as a head of household.

152.    Martinez is subject to penalty under I.R.C. § 6695(g) because she failed to exercise due diligence in determining her customers' eligibility for the EITC and the CTC.

153.    Additionally, under I.R.C. § 7407, if the court finds that a return preparer has continually or repeatedly engaged in conduct subject to penalty under I.R.C. § 6694 or 6695 or that substantially interferes with the proper administration of the internal revenue laws, and if the court further finds that a narrower injunction prohibiting only the enumerated conduct would not

be sufficient to prevent further interference with the proper administration of the internal revenue laws, the court may enjoin that person from further acting as a federal income tax return preparer.

154.    An injunction against Martinez is necessary and appropriate to prevent the recurrence of Martinez's conduct subject to penalty under I.R.C. §§ 6694 and 6695.

155.    Given the variety, duration and duplicity of Martnez's fraudulent preparation activities, anything less than a permanent injunction and complete bar on the preparation of tax returns is unlikely to stop Martinez from preparing fraudulent tax returns.

## COUNT II: Injunction under I.R.C. § 7402(a) for Unlawful Interference with Enforcement of the Internal Revenue Laws

156.    The United States incorporates by reference the allegations in all preceding paragraphs as though fully set forth herein.

157.    Pursuant to I.R.C. § 7402(a), a court is authorized to issue orders of injunction as may be necessary or appropriate to enforce the internal revenue laws.

158.    I.R.C. § 7402(a) expressly provides that its injunction remedy is "in addition to and not exclusive of" other remedies for enforcing the internal revenue laws.

159.    Martinez's activities described above substantially interfere with the enforcement of the internal revenue laws because her preparation and filing of numerous fraudulent tax returns resulted in customers not paying their true federal tax liabilities and receiving tax refunds to which they were not entitled.

160.    Martinez has shown that she should not be allowed to continue to prepare tax returns or operating a tax preparation business because she has deliberately played the audit lottery on behalf of her customers. By manipulating the income and expenses on Schedule C, items for which there is no independent third-party reporting, and manipulating dependents and

filing status, Martinez has selected schemes that the IRS can detect only by auditing returns or interviewing her customers. Because Martinez knows that the IRS lacks the resources to audit every return that includes these schedules, Martinez is actively subverting the American tax system, which relies on taxpayers to self-report their income and expenses fully and accurately.

161.    An injunction prohibiting Martinez from preparing or assisting in the preparation of tax returns is needed to stop her from preparing and filing fraudulent tax returns and to prohibit her from otherwise interfering with the proper administration and enforcement of the internal revenue laws now, and in the future.

162.    Given the continued, varied, and duplicitous nature of Martinez's misconduct, she is likely to continue to engage in illegal conduct in the future.

163.    If Martinez is not enjoined, the United States will suffer irreparable harm from the underpayment of taxes and the exhaustion of resources to enforce the internal revenue laws.

164.    The public interest would be advanced by enjoining Martinez because an injunction will stop her illegal conduct and the harm that her conduct is causing the United States Treasury and the public.

165.    An injunction under I.R.C. § 7402 is necessary and appropriate, because the United States has no adequate remedy at law.

**WHEREFORE**, the United States of America prays for the following:

A.    That the Court find that Dorka Urena de Martinez, d/b/a Dorka Travel, has continually and repeatedly engaged in conduct subject to penalty under I.R.C. §§ 6694 and 6695, and in other fraudulent or deceptive conduct that substantially interferes with the proper administration of the tax laws; that, pursuant to I.R.C. § 7407, an injunction merely prohibiting conduct subject to penalty under I.R.C. §§ 6694 and 6695, or other fraudulent or deceptive

conduct, would be insufficient to prevent her interference with the proper administration of the tax laws; and that she should be permanently enjoined from acting as a tax preparer;

B.     That the Court find that Dorka Urena de Martinez, d/b/a Dorka Travel has interfered with the enforcement of the internal revenue laws and that injunctive relief is appropriate to prevent the recurrence of that conduct pursuant to I.R.C. § 7402(a);

C.     That the Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter a permanent injunction enjoining Dorka Urena de Martinez, d/b/a Dorka Travel, her officers, agents, servants, employees, and attorneys, and anyone in active concert or participation with her, or with them, from directly or indirectly:

1.  Preparing or assisting in the preparation of federal tax returns, amended returns, and other related documents and forms for anyone other than herself;

2.  Advising, counseling, or instructing anyone about the preparation of a federal tax return;

3.  Filing or assisting in the filing of a federal tax return for anyone other than herself;

4.  Owning – directly or indirectly - managing, controlling, working for, or volunteering for a tax-return preparation business;

5.  Advertising tax return preparation services through any medium, including the internet and social media;

6.  Maintaining, assigning, holding, using, or obtaining a Preparer Tax Identification Number (PTIN) or an Electronic Filing Identification Number (EFIN);

7.  Representing customers in connection with any matter before the IRS;

8.  Employing any person to work as a federal income tax return preparer;

9.  Providing office space, equipment, or services for, or in any other way facilitating, the work of any person or entity that is in the business of preparing or filing federal tax returns or other federal tax documents or forms for others or representing persons before the IRS;

10. Selling, providing access, or otherwise transferring to any person some or all of the proprietary assets of Dorka Travel generated by her tax return preparation activities, including but not limited to customer lists;

11.  Referring any customer to a tax preparation firm or a tax return preparer, or otherwise suggesting that a customer use any particular tax preparation firm or tax return preparer; and/or

12. Engaging in any conduct that substantially interferes with the administration and enforcement of the internal revenue laws.

D.      That the Court enter an order requiring Dorka Urena de Martinez to prominently post a copy of the permanent injunction (with dimensions of at least 12 by 24 inches) at all physical locations where she conducts business and requiring Dorka Urena de Martinez to prominently post an electronic copy of the permanent injunction on any website or social media site or social media profile that she maintains or creates over the next five years;

E.      That the Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter an order requiring Dorka Urena de Martine to produce to counsel for the United States, within 30 days of the Court's order, a list that identifies by name, social security number, address, email address, and telephone number and tax period(s) all persons for whom she prepared federal tax returns or claims for a refund, for tax years beginning in 2013 and continuing through this litigation;

30

F.      That the Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter an order requiring

Dorka Urena de Martinez, within 30 days of receiving the Court's order, to contact by U.S. mail

and, if an email address is known, by email, all persons for whom she prepared federal tax

returns, amended tax returns, or claims for refund since January 2014, as well as all employees

or independent contractors she has had since January 2014, and to inform them of the permanent

injunction entered against her by sending each of them a copy of the order of the permanent

injunction, with no other enclosures unless approved by the Department of Justice;

G.      That the Court, pursuant to I.R.C. §§ 7402(a) and 7407, enter an order requiring

Dorka Urena de Martinez, d/b/a Dorka Travel, within 45 days of receiving the Court's order, to

file a declaration, signed under penalty of perjury, confirming that she has received a copy of the

Court's order and complied with the terms described in paragraphs D through F of this

Complaint;

H.      That the Court grant the United States such other relief as the Court deems

appropriate.

DAVID A. HUBBERT
Acting Assistant Attorney General
Tax Division, U.S. Department of Justice

/s/ Thelma A. Lizama
THELMA A. LIZAMA
Trial Attorney
Tax Division, Department of Justice
P.O. Box 55
Washington, D.C.  20044
(202) 616-3339
(202) 514-5238 (fax)
Thelma.A.Lizama@usdoj.gov

Local Counsel:

NATHANIEL R. MENDELL
Acting United States Attorney